**REMAND/MADE JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLUSH LOUNGE LAS VEGAS, LLC, ) | No CV 08-8394-GW (JTLx) |
| Plaintiff, ) | |
| v. ) | **DECISION AND ORDER re** |
| ADMIN LALJI, STEPHEN J. ) | **APPLICATION FOR REMAND** |
| ROUGHLEY, THADDAS L. ALSTON, ) | |
| LARCO INVESTMENTS LTD., ) | |
| MAPLE LEAF PROPERTY ) | |
| MANAGEMENT INC., HOTSPUR ) | |
| GLOBAL LTD., HOTSPUR RESORTS ) | |
| NEVADA, INC., ) | |
| Defendants. ) | |

## I. Introduction

On November 4, 2008, plaintiff Plush Lounge Las Vegas, LLC ("Plaintiff" or "Plush Lounge") filed this action against defendants Amin Lalji, Stephen J. Roughley, Thaddas L. Alston, Larco Investments Ltd., Maple Leaf Property Management Inc., Hotspur Global Ltd., and Hotspur Resorts Nevada, Inc. ("Hotspur Resorts") (collectively "Defendants") for fraud, negligent misrepresentation, intentional interference with contract, conversion and unfair competition. On December 19, 2008, Defendants removed this matter to federal court on the basis of diversity of the parties.

A number of motions have been filed. Plaintiff has applied to have the case remanded back to state court because there is a lack of complete diversity. <u>See</u> Docket Item Number ("Doc. No.") 23. Defendants have filed: 1) a motion to dismiss the

1  Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and a
2  motion to strike under FRCP 12(f) (see Doc. No. 9); 2) a motion to transfer this action
3  to the District of Nevada pursuant to 28 U.S.C. § 1404(a) (see Doc. No. 26); and 3)
4  except for Hotspur Resorts, a motion to dismiss for lack of personal jurisdiction
5  pursuant to FRCP 12(b)(2) (see Doc. No. 10).

6          As this Court finds that there is not complete diversity herein, it will remand the
7  matter back to state court.  Consequently, it need not address Defendants' motions.

8  **II.  Legal Standard**

9          A suit filed in state court may be removed to federal court by the defendant or
10  defendants if the federal court would have had original subject matter jurisdiction over
11  that suit.  28 U.S.C. § 1441(a); Snow v. Ford Motor Co., 561 F.2d 787, 789 (9th Cir.
12  1977).  A motion to remand is the proper procedure for challenging removal.  See 28
13  U.S.C. § 1447(c).  Courts construe the removal statute strictly against removal, and any
14  doubts must be resolved in favor of remand.  Boggs v. Lewis, 863 F.2d 662, 663 (9th
15  Cir. 1988).  The defendant always bears the burden of establishing that removal is
16  proper.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "Federal juris-diction
17  must be rejected if there is any doubt as to the right of removal in the first  instance."
18  Id.

19  **III.  Discussion**

20      **A.  Background**

21          The Complaint herein avers that Plush Lounge "is a limited liability company,
22  duly organized and validly existing under the laws of the state of California."  See ¶
23  3 of Complaint attached as Exhibit A to Notice of Removal, Doc. No. 1.  Defendant
24  Roughley is alleged to be "an individual residing in Nevada and doing business in
25  Angeles County [sic], California" (Id. at ¶ 5), and Hotspur Resorts "is a purported
26  corporation allegedly organized and existing under the laws of Nevada . . . ."  See Id.
27  at ¶ 10.

28          In support of its application for remand, Plush Lounge submitted the Declaration

-2-

of John C. Kirkland (the general outside counsel for Plush Lounge) who states (and provides documentary evidence from the State of Nevada Secretary of State) that "since October 2008, the managing member of Plush [Lounge] has been PLLV Holdings, LLC, a Nevada limited liability company."  See ¶ 2 of Doc. No. 24-2. Plaintiff has also included the Declaration of Roland Katavic who states he is a citizen of Nevada and has been a member of PLLV Holdings, LLC, since October 2008.  See Doc. No. 25, at ¶ 3.  Plaintiff argues that since there are Nevada citizens on both sides of this litigation, there is no diversity jurisdiction.

A little litigation history is appropriate here.  Prior to this action, Plush Lounge had brought a lawsuit against Hotspur Resorts.  See Plush Lounge Las Vegas, LLC, v. Hotspur Resorts Nevada, Inc., Case No. CV-06-2626 (C.D. Cal.).  In that case, Hotspur Resorts took the position that Plush Lounge had to be treated as a Nevada citizen because it was (at that time) a limited liability company with one or more members who were citizens of Nevada.  See e.g. Hotspur Resorts' Notice of Motion and Motion to Dismiss Supplemental Claims in CV-06-2626, which is attached as  Exhibit 1 to Plaintiff's Reply Memorandum herein, Doc. No. 32-2.

**B. Analysis**

The parties' respective arguments regarding the existence of diversity jurisdiction (and, specifically, the question of Plaintiff's citizenship) are now diametrically opposed to the positions they took in the prior action.  In the previous lawsuit, Plaintiff alleged that it was a limited liability company, "duly organized and validly existing under the laws of the State of California," and that it had no members that were citizens of the state of Nevada.  Hotspur Resorts asserted that it had learned during discovery that at least two members of Plush Lounge were citizens of Nevada at the time the action was filed, although both members were subsequently bought out by Plush Lounge.

There is an explanation for the parties' shifts in positions.  In its moving papers, Plaintiff asserts that "[s]ince October 2008, the managing member of Plush has been

-3-

1  PLLV Holdings, LLC ["PLLV"], a Nevada limited liability company." Kirkland Decl.

2  ¶ 2.  A copy of PLLV's charter is attached as Ex. 1 to the Kirkland Declaration.  Also

3  submitted with Plaintiff's moving papers is the Declaration of Roland Katavic, who

4  states that he is a citizen of Nevada and a member of PLLV.  Katavic Decl. ¶¶ 2 and

5  3.  Both Plaintiff and PLLV are limited liability companies whose citizenship is

6  determined by the citizenship of their members (and their members' members).  See

7  Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006); see

8  also  Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 347-48 (7th Cir. 2006) ("The

9  citizenship of a limited liability company is that of its members, and its members may

10  include partnerships, corporations, and other entities that have multiple citizenships.

11  A federal court thus needs to know each member's citizenship, and if necessary each

12  member's members' citizenships.") (citations omitted).  Thus, it would appear that

13  Plaintiff is non-diverse from at least Defendant Hotspur Resorts, and that there cannot

14  be removal jurisdiction based on diversity.

15      Defendants, writing that "any addition of Mr. Katavic . . . is nothing more than

16  a collusive and improper attempt to interfere with diversity jurisdiction" (see Opp. 8:8-

17  9), urge this Court to ignore Katavic's citizenship for the purpose of determining

18  whether diversity exists.  Defendants have cited a small array of cases in which courts

19  have "looked through" attempts to avoid federal jurisdiction by disregarding assign-

20  ments of claims, appointments of administrators, and joinders of sham defendants in

21  order to find that diversity jurisdiction exists.  Not a single case has been cited in which

22  a court was permitted to ignore the citizenship of a member of a LLC party,

23  partnership, or unincorporated association, which is what is presented here.

24      Defendants would have the Court analogize to the "assignment" line of cases

25  exemplified by Kramer v. Carribean Mills, 394 U.S. 823 (1963).  It is doubtful, for the

26  reasons discussed below, that this analogy is a fruitful one.  Nevertheless, the question

27  merits a brief discussion whether a court may, in order to find diversity jurisdiction,

28  examine the motivation behind an assignment of a claim that ostensibly destroys

-4-

1  diversity.

2       In <u>Kramer</u>, a Panamanian corporation assigned its cause of action under a
3  contract to a Texas attorney in order to create diversity jurisdiction. <u>Kramer</u> would
4  appear to be distinguishable from this case, if for no other reason, in that a federal
5  statute specifically provides that "[a] district court shall not have jurisdiction of a civil
6  action in which any party, by assignment or otherwise, has been improperly or
7  collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359.
8  In <u>Oakley v. Goodnow</u>, 118 U.S. 43, 45 (1886), the Supreme Court wrote: "While . .
9  . the courts of the United States have under the act of 1875 the power to dismiss or
10 remand a case, if it appears that a colorable assignment has been made for the purpose
11 of imposing on their jurisdiction, no authority has as yet been given them to take
12 jurisdiction of a case by removal from a State court when a colorable assignment has
13 been made to prevent such a removal." <u>See also</u> <u>Provident Savings Life Assurance</u>
14 <u>Society v. Ford</u>, 114 U.S. 635, 641 (1885) (colorable assignment of a complete cause
15 of action to defeat removal is effective to give the state court exclusive jurisdiction).
16 Neither <u>Oakley</u> nor <u>Provident</u> has ever been *expressly* overruled or superseded.

17      Courts, however, have questioned the continuing validity of the <u>Provident</u> line
18 of cases to disregard an administrator appointment which destroyed diversity, <u>see</u>
19 <u>Grassi v. Ciba-Geigy, Ltd.</u>, 894 F.2d 181, 184 (5th Cir.1990) (citing <u>Miller v. Perry</u>,
20 456 F.2d 63 (4th Cir.1972)). In <u>Grassi</u>, the Fifth Circuit wrote that <u>Provident</u> and its
21 progeny "stand . . . for two propositions: First, that federal courts lack the power to
22 look beyond the pleadings in determining the existence of diversity jurisdiction absent
23 specific statutory authorization; and second, that state law and the state court systems
24 will adequately defend a defendant's right to removal jurisdiction against devices
25 designed to defeat it." <u>Id.</u> at 183. Writing that (1) subsequent cases have permitted
26 courts to look beyond pleadings, and (2) the proposition that state courts will
27 adequately defend diversity jurisdiction "has proved untrue in practice," the Fifth
28 Circuit endorsed the Fourth Circuit's view that "the difference between devices

1  creating and devices destroying diversity was now immaterial." Id. at 184 (citing

2  Miller, 456 F.2d at 66).

3      The Ninth Circuit, in dicta, has tentatively embraced the Fifth Circuit's rea-

4  soning.  In Attorneys Trust v. Videotape Computer Prods., 93 F.3d 593, 598 (9th

5  Cir.1996), it wrote:

6           In reaching our conclusion that the nature of the
        assignment [destroying diversity] must be considered, we do
7       not overlook older Supreme Court decisions regarding
        removal. See, e.g., Provident Sav. Life Assur. Soc'y v. Ford,
8       114 U.S. 635, 5 S. Ct. 1104, 29 L. Ed. 261 (1885); see also
        Carson v. Dunham, 121 U.S. 421, 7 S. Ct. 1030, 30 L. Ed.
9       992 (1887); Leather Mfrs.' Nat'l Bank v. Cooper, 120 U.S.
        778, 7 S. Ct. 777, 30 L. Ed. 816 (1887); Oakley v.
10      Goodnow, 118 U.S. 43, 6 S. Ct. 944, 30 L. Ed. 61 (1886). In
        those cases, the Court refused to allow removal of an action
11      filed in state court after a diversity-destroying colorable
        assignment was made, even if it was for collection only. In
12      each of those cases, the Supreme Court indicated that it was
        loath to interfere with state court jurisdiction, that nothing in
13      the removal statutes referred to removal in such an instance,
        and that the parties could present their real party in interest
14      objections and their assertions about destruction of federal
        court jurisdiction as defenses in the state court. See, e.g.,
15      Provident, 114 U.S. at 640-41, 5 S. Ct. at 1107.
             The Fifth Circuit has expressed doubt about the
16      continuing validity of the underlying rationales of those
        cases. See Grassi, 894 F.2d at 182-85. While the Fifth
17      Circuit's doubts are well grounded, we need not recite them
        here, nor need we rely upon them.

18      Even if the Court were to accept the premise that the Court may look behind the

19  collusive *assignment of a claim* in order to find diversity (and it may well be true that

20  the Provident line of cases is obsolete in that limited scenario), it would require a

21  quantum leap in logic to conclude from this that it can examine the motivation behind

22  the assignment of an interest in an LLC (or the addition of a diversity destroying new

23  member into the LLC).  All the two scenarios really have in common is the word

24  "assignment."  In the "assignment" cases cited by Defendants, the jurisdictional ques-

25  tion is answered by deciding who is the real party in interest.  See, e.g., Attorneys

26  Trust, 93 F.3d at 599.  Here, there is no question that Plush Lounge is the proper party.

27  It is not obvious that any of the cases cited by Defendants even support their argument

28

1   that Plaintiff's motivation in adding PLLV Holdings, LLC, as a managing member is
2   relevant to the determination whether diversity jurisdiction exists.[1]  This would
3   especially be true here where Plush Lounge was originally a Nevada limited liability
4   company that unsuccessfully attempted to transform itself into a California citizen for
5   purposes of the prior litigation.

6   **IV.  Conclusion and Order**

7        For the reasons stated above, Plaintiff's application for a remand of this matter
8   back to state court is granted as there was not complete diversity of the parties.

9        This action is remanded forthwith.

10

11   DATED:  This 7th day of December, 2010

12

13        _George H. Wu_ (signature)
14               GEORGE H. WU
            United States District Judge

15

16

17

18

19

20

21

22   [1] In Go Computer Inc. v. Microsoft Corp., 2005 U.S. Dist. LEXIS 31404 (N.D. Cal. Nov. 21, 2005), it
was noted that the decisions in Grassi and Attorneys Trust involved (and were properly limited to) partial
23   claim assignment situations, especially where the lawsuits were originally filed in federal court. Id. at *6-7.
In rejecting Microsoft's contention that diversity was still present even though plaintiff Go Computer was
24   a citizen of the same state as Microsoft because Go Computer been assigned the claim upon which its lawsuit
was based, the court stated:
25        [B]ecause the Court cannot find that the assignment in question was a
     partial assignment, because Provident and its progeny have not been
26        overruled, because this case was not originally filed in federal court, see
     Attorney's [sic] Trust, 93 F.3d at 599, and because the Court must resolve
27        any doubts against removal, the Court concludes that Microsoft has not met
     its burden to establish that removal jurisdiction exists on the basis of
     diversity.
28   Id.